587 So.2d 189 (1991)
STATE of Louisiana
v.
David Lee BREWINGTON.
No. CR90-1151.
Court of Appeal of Louisiana, Third Circuit.
October 2, 1991.
Rehearings Denied November 13, 1991.
Michael Bonnette, Natchitoches, for defendant-appellant.
Michael Henry, Dist. Atty., Natchitoches, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and STOKER and LABORDE, JJ.
STOKER, Judge.
This case deals with whether the trial court committed reversible error in allowing *190 the State to introduce evidence of defendant's possession of crack cocaine in defendant's trial on charges of second degree murder.
David Lee Brewington (defendant) was indicted by a grand jury on the charge of second degree murder for the homicide of Yolanda Michelle Virece. The defendant was subsequently tried and found guilty as charged by a unaminous verdict. The defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Defendant appeals his conviction urging three asignments of error. We need only address defendant's first assignment of error, as it is dispositive of the case.
We reverse defendant's conviction and remand for a new trial.

FACTS
On March 20, 1990, shortly after 6:00 a.m., the nude body of Yolanda Virece (victim) was found in a public park in Natchitoches.
At the crime scene near the body, the investigating officers found shattered glass from a vehicle. A "Buckle up" sticker, unique to Ford vehicles, was found among the pieces of glass. A set of tire tracks, determined to be those of a small economy car, were also found at the scene. The tire tracks revealed that one tire on the vehicle was smaller than the others. Additionally, several items of clothing and a pint bottle of Bacardi dark rum were found at the scene.
Defendant's automobile, a red Ford Festiva, was later located by the police. The automobile had a small spare tire on the left front. Also, the driver's side window was shattered, and pieces of glass were found on the inside of the automobile.
A small hole, which appeared to be a bullet hole, was found on the inside panel of the driver's door; a lead projectile was later recovered from the door. Additionally, a spent bullet casing, a box of Winchester Super X bullets, a box of .22 caliber high power bullets, and a loaded clip for a.25 caliber automatic pistol were found in defendant's car. Two .22 caliber spent casings were found in the grass near the vehicle.
Christopher Fisher, an acquaintance of the defendant, testified that he was with the defendant the evening before the homicide. Fisher testified that he and the defendant went to a nightclub known as Effie Zeno's. He also testified that while he was with the defendant, the defendant had in his possession what appeared to be a .25 caliber automatic pistol and either a .22 or.32 caliber revolver. Defendant dropped Fisher off at Fisher's girlfriend's house at approximately 12:30 a.m. or 1:00 a.m.
Monica Wardsworth, a cousin and friend of the victim, testified that she saw the defendant at Effie Zeno's the night before the homicide. She stated that she also saw the victim at the nightclub. Wardsworth testified that she saw the defendant and victim leave the nightclub together in the defendant's Ford Festiva at approximately 1:30 a.m. on March 20, 1990.
Officer Cary Hargrove testified that he saw the defendant, the victim, and an unidentified male at McFarland's Service Station at approximately 2:00 a.m. on March 20.
Donnie Patterson, the clerk on duty at McFarland's the morning of the homicide, testified that he saw the defendant at approximately 1:30 a.m. or 1:45 a.m. on March 20, and that the defendant purchased a pint of Bacardi dark rum from Patterson. Patterson also testified that he saw the victim in the defendant's Ford Festiva at this time, and that the defendant and victim left together.
At approximately 4:00 a.m. or 4:30 a.m. defendant returned to the store and showed Patterson what defendant claimed to be crack cocaine. Defendant entered the store to use the restroom and asked Patterson to hold his tape player because "she" might steal it. When the defendant returned from the restroom, he showed Patterson a gun stuck in his waistband; the defendant claimed this gun was a .357, but Patterson was unable to identify it as such because he only saw the gun's handle. The defendant had parked in such a way that *191 Patterson could not see whether the victim was with the defendant at this point.
Donnell Johnson testified that, just before dawn, as he was walking past the area where the body was later found, he saw a small red car. He testified that he heard a man and woman arguing in that car. Johnson stated that as he was leaving the area, he heard three or four gunshots and then saw the red car leave. Johnson testified that he returned to that area and found the victim's body.
Vienna Gay, who lives next to the area where the victim's body was found, testified that she heard three gunshots the morning of March 20, 1990, between 5:30 a.m. and 6:00 a.m.
Pearlie Hooper, defendant's next door neighbor, testified that she saw the defendant pull into his driveway in the early morning hours after 6:00 a.m. on March 20.
Dr. George McCormic, a forensic pathologist, testified that he conducted the autopsy on the victim, which revealed that the victim died of multiple gunshot wounds. Dr. McCormic also testified that cocaine and marijuana were found in the victim's system, and that the presence of cocaine indicated use within twelve hours prior to the victim's death.
Richard Beighley, an employee of the North Louisiana Crime Lab, testified that bullets removed from the victim's body were found to be .22 caliber bullets. However, a weapon was not submitted for comparison.
Beighley also testified that plaster prints taken of the smaller tire tracks at the crime scene revealed the same tread design as the spare tire on the defendant's vehicle.

OPINION
Prior to the trial, the State informed the defendant that Donnie Patterson would testify that the defendant showed him what defendant claimed was crack cocaine and a.357. Defendant objected to the introduction of this evidence on the grounds that it constituted inadmissible evidence of other crimes.
The State contended, and the trial court held, that the evidence was admissible under LSA-C.E. art. 404 B(1) as the evidence related to conduct which constituted an integral part of the homicide.
Defendant appeals his conviction contending that the trial court erred in admitting into evidence the testimony of Patterson regarding the defendant's possession of crack cocaine and the .357 magnum.[1]
The general rule as to the admissibility of evidence of other crimes is that the prosecution may not introduce such evidence unless it is substantially relevant for some purpose other than to show that defendant is guilty because he is a man of general criminal character and thus more likely to have committed the crime. State v. Haarala, 398 So.2d 1093 (La.1981); State v. Brown, 428 So.2d 438 (La.1983); State v. Kahey, 436 So.2d 475 (La.1983).
LSA-C.E. art. 404 B(1) provides that:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding."[2]
(Emphasis added.)
The State argues that the testimony regarding defendant's possession of crack *192 cocaine was admissible as an integral part of the homicide because such evidence links the defendant with the victim who had cocaine in her system at the time of her death. Moreover, the State urges that had the trial judge not ruled that this evidence was admissible, there would have been the anomaly of the evidence of cocaine in the victim's system without any explanation of how it got there. These arguments are specious and are non sequitur.
If in fact what defendant showed to Donnie Patterson was crack cocaine, we fail to see how it might link defendant with the crime because the victim's blood system contained cocaine at the time of her death. No reasoning suggests that it was more likely that the victim got cocaine from the defendant than from some other source. Under the evidence, one may conclude that the victim had her own cocaine before she and the defendant got together. Dr. McCormic testified that the cocaine found in the victim's system indicated use within twelve hours of her death. The record indicates that the victim and the defendant did not get together until approximately 1:30 a.m., four to four and one-half hours before her death. The victim had ample opportunity within the seven and one-half to eight hours before meeting up with the defendant to obtain and ingest the cocaine found in her system.
We are unable to see any such "anomaly" as the State thinks would exist if the evidence had not been let in. The fact that the victim's blood contained cocaine bears no relevance to the commission of the crime. The only function which evidence of defendant's possession of cocaine could have served was to depict him as a "bad man."
Finally, we fail to see how the possession of cocaine was essential to the completion of the homicide, such that it constituted an integral part, or "part and parcel", of that crime. There is no evidence that the defendant used the cocaine to obtain access to the victim to perpetrate the homicide. Neither was the use of cocaine the cause of the victim's death.
Therefore, we hold that the testimony of Patterson concerning defendant's possession of crack cocaine was inadmissible as evidence of other crimes.
We now address the effect on the defendant's conviction of the trial court's erroneous admission of "other crimes" evidence.
La.C.Cr.P. art. 770(2) provides that:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;" ...
While defendant did not move for a mistrial, his objection to the admissibility of the evidence was sufficient to preserve the issue for review before this court. "As to the erroneous admission of evidence, all that is required for review is an objection to the evidence at trial followed by an assignment of error on appeal." State v. Duke, 362 So.2d 559, 561 (La.1978). A defendant is not barred from asserting the error in the trial judge's ruling by his failure to move for a mistrial. Once an objection has been made and overruled, to require defendant to make a motion for mistrial would require the defendant to do a vain and useless thing. State v. Hamilton, 356 So.2d 1360 (La.1978).
*193 We are not permitted to engage in a harmless error analysis regarding the trial court's error in connection with the other crimes evidence. The court in State v. Brown, supra, page 443, explained that "(t)here is scarcely room for a harmless error argument with regard to other crimes evidence. The basis for this rule, and the mandatory provision of C.Cr.P. 770(2), is that the effect on a jury of inadmissible other crimes evidence cannot be determined, and that such evidence is per se prejudicial and a substantial violation of a statutory right."

CONCLUSION
Therefore, we are constrained to reverse the defendant's conviction. The defendant's sentence is vacated, and the case is remanded for a new trial in accordance with the law.
CONVICTION REVERSED AND REMANDED FOR NEW TRIAL.
DOMENGEAUX, C.J., dissents and assigns reasons.
DOMENGEAUX, Chief Judge, dissenting.
I respectfully suggest that the majority opinion is in error in reversing defendant's conviction.
Prior to trial, the state informed defense counsel that they planned to use the testimony of Donnie Patterson. Defense counsel objected to the use of this testimony because it related to other bad acts. Donnie Patterson was going to testify that on the morning of the homicide defendant showed him a yellow looking rock and said that it was crack cocaine. He also showed him a pistol and said that it was a .357 caliber pistol.
La.C.E. art. 404 B(1) reads as follows:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. (Emphasis added).
The evidence indicated that the victim was shot three times and the presence of cocaine was found in her system. The parent compound of cocaine was found in her system and this indicates recent use.
The testimony of Donnie Patterson was admissible under La.C.E. art. 404 B(1) because his testimony relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. The fact that defendant had a gun and cocaine in his possession is an integral part of the transaction because the victim was shot three times and cocaine was found in her system. Additionally, I would think that the evidence was admissible in order to show intent, and at least opportunity under the Article.
In view of my conclusions, I would respectfully suggest that the two remaining assignments of error be addressed, the one having to do with the error in not granting a mistrial, and the other that the verdict is contrary to the law and the evidence. I have reviewed those assignments and find them without merit.
Defendant's conviction should be affirmed.
I respectfully dissent.
NOTES
[1] We refrain from addressing the admissibility of Patterson's testimony regarding possession of the .357 as it is unclear whether such possession was criminal for purposes of admissibility of other crimes evidence. We can dispose of this case based on trial court error in admitting Patterson's testimony concerning defendant's alleged possession of cocaine.
[2] The Author's Note (6) to this article in the Handbook on Louisiana Evidence Law, Pugh, Force, Rault and Triche (1991) provides:

"(6) The final phrase of Article 404(B)(1) was substituted for the phrase "res gestae" embraced in former R.S. 15:447-48. This provision must be interpreted and applied with great caution. See Rault, An Overview of the New Louisiana Code of EvidenceIts Imperfections and Uncertainties, 49 La.L.Rev. 697, 709 (1989). In order to qualify under this category the other crime must bear such a close relationship with the charged crime that the indictment or information as to the charged crime can fairly be said to have given notice of the other crime as well. See State v. Schwartz, 354 So.2d 1332 (La.1978). The broad interpretation sometimes accorded "res gestae" is particularly inappropriate. See Authors' Note (18) to Article 801(D)(4) and Authors' Notes (1) and (2) to Article 803(1). The emphasis here should be on whether the other crime, wrong or act is "part and parcel" of the crime charged, and is not really being offered for the purpose of showing that the accused is a person of bad character. See State v. Prieur, 277 So.2d 126 (La.1973)."