STOKER, Judge.
This case was previously before us, and we reversed defendant’s conviction of second degree murder in violation of LSA-R.S. 14:30.1 and remanded the case for a new trial with the Chief Judge of this court dissenting. Our opinion is reported at 587 So.2d 189 (La.App. 3d Cir.1991). Our reversal was based on the majority’s conclusion that the conviction was defective because the trial court had permitted the introduction of inadmissible “other crimes” evidence which was not subject to the harmless error rule.
In a per curiam opinion dated June 5, 1992, the Louisiana Supreme Court reversed our ruling on the finding that the evidence permitted was admissible under LSA-C.E. art. 404B(1) because the evidence of the conduct in question constituted an integral part of the act or transaction that was the subject of the present proceeding. 601 So.2d 656. The supreme court remanded the case to this court for consideration of defendant’s remaining assignments of error.
There are only two remaining assignments of error which are as follows:
1. The trial court erred in not granting a mistrial, as several members of the *5 jury saw the defendant in handcuffs and manacles during a trial recess.
2. The trial court erred in that the verdict is contrary to the law and evidence.
Assignment of Error No. 1
Defendant alleges that the trial court erred in not granting a mistrial, as several members of the jury saw the defendant in handcuffs and manacles during a trial recess.
It is clear that a defendant should not be shackled or handcuffed before the court except under exceptional circumstances. The momentary use of shackles for the limited purpose of transporting an accused does not mandate a mistrial. State v. Wilkerson, 403 So.2d 652 (La.1981). See State v. McMellon, 525 So.2d 1094 (La.App. 3d Cir.), writ denied 532 So.2d 149 (La.1988).
Defendant alleges that when the court recessed he was handcuffed, and he and Deputy McKindley Hoover exited through a side door into a hallway. Defendant saw about four jurors in the hallway and asked if he was supposed to be handcuffed in the presence of jurors. Deputy Crawford Fick-lin told Deputy Hoover that he had to remove the handcuffs. On cross-examination defendant said that the three jurors who saw him were seated on the back row and on the right side of the jury box. When asked to describe the jurors defendant was unable to do so. Defendant could not say what color hair they had or what type clothing they were wearing. When asked if the jurors were large or small, defendant described them to be medium.
Deputy Hoover testified that he removed defendant from the courtroom about five minutes after the jurors left for lunch. He was walking down the hall, and defendant said that some of the jurors were behind him. Deputy Hoover said that he saw a couple of people standing next to the water fountain, but he did not pay much attention to them. Deputy Hoover testified that he did not recognize any of the people in the hallway as jurors.
Deputy Ficklin testified that he exited the elevator and told Deputy Hoover that it was not necessary to transport defendant in handcuffs. He saw several people standing in the hallway but did not recognize any of them as jurors.
Deputy James Lee testified that he escorted the jury, and. he did not see defendant. He has no knowledge of whether any of the jurors saw defendant in the hallway.
At the conclusion of the testimony the court held as a matter of fact that the jury did not see defendant manacled. This issue revolves around the word of defendant versus three bailiffs. It is obvious that the court believed the bailiffs. Since this is an issue of credibility, the appellate court should not reverse the trial court absent manifest error. Defendant was unable to identify the persons who saw him as jurors.
Therefore, this assignment of error lacks merit.
Assignment of Error No. 2
Defendant alleges that the trial court erred in that the verdict is contrary to the law and evidence.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982). It is the role of the factfinder to weigh the respective credibilities of the witnesses, and therefore the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the essential elements of second degree murder beyond a *6 reasonable doubt. La.R.S. 14:30.1 reads in pertinent part, as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;
According to the statute, the elements which must be proven beyond a reasonable doubt are the killing of a human being and the specific intent to kill or inflict great bodily harm. Since there were no witnesses to the death of the victim, the state relied on circumstantial evidence in order to show that defendant killed Yolanda Vi-rece. Where an essential element of a crime is sought to be proven by circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. La.R.S. 15:438.
We set forth the facts of this case in our prior opinion reported at 587 So.2d 189 (La.App. 3d Cir.1991). After viewing the evidence in the light most favorable to the prosecution, it is clear that a reasonable trier of fact could have excluded every reasonable hypothesis of innocence and found defendant guilty of second degree murder.
For the foregoing reasons we affirm defendant’s conviction.
AFFIRMED.